Michael R. Reese (SBN 206773)
Carlos F. Ramirez (*pro hac vice* to be filed)
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reesellp.com*
         *cramirez@reesellp.com*

George V. Granade (SBN 316050)
**REESE LLP**
8484 Wilshire Boulevard
Los Angeles, California 90211
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*ggranade@reesellp.com*

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON LETIZE, individually, and on behalf of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> ELLATION, LLC, a Delaware limited liability company, and RARE BITS, INC., a Delaware corporation. <br><br> Defendants | Case No: 20-cv-3739 <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff Brandon Letize ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Ellation LLC doing business as Crunchyroll ("Crunchyroll" or "Defendant") and Rare Bits, Inc. ("Rare Bits" or "Defendant" and, together with Crunchyroll, "Defendants"), and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

### Jurisdiction

1.      This Court has personal jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of Plaintiff and members of the Class, which exceeds 100 persons, exceed the sum or value of $5,000,000 and there is diversity of citizenship between at least one member of the Class and Defendants.

### Venue

2.      Venue is appropriate in this District pursuant to U.S.C. § 1391(a)(1) and (2) . Defendants conduct substantial business throughout California and their headquarters and principal places of business are located in this District.

## NATURE OF THE ACTION

3.      This is a proposed nationwide class action against Defendants for misleading consumers about whether, and how long, they could use the Digital Drops application or "app," and the digital stickers and other digital collectible items purchased by consumers via that app (the "Products").

4.      Digital Drops was an app that sold rare collectible digital anime stickers and other digital collectible items. Anime is the Japanese term for animation, which refers to all forms of animated media.

5.      Defendants launched the Digital Drops app around August 2019.

6.    The Products sold via the Digital Drops app were touted by Defendants as "*rare*" and "*highly collectible*" digital stickers and other digital collectible items from dozens of anime shows.

7.    Once purchased, the anime digital stickers could be kept as part of a collection or traded with other persons on the Digital Drops app.

8.    Like any other collectible, the rarer the digital sticker the more valuable.  In addition, like any other collectible, the value of rare stickers would rise over time. Defendants prominently, and frequently, touted these themes throughout the course of their marketing and advertising of Digital Drops digital collectibles.

9.    In addition, during the marketing and advertising of the Digital Drop app and digital collectibles, Defendants prominently and conspicuously represented that the Products, once purchased, would be online indefinitely or, at least, for a reasonable length of time from the date of release.

10.    In early February 2020, Defendants announced that on February 17, 2020 at 11:59 p.m. PST, Defendants would shut down the servers running the Digital Drops app and that the Products would no longer be accessible by its owners.

11.    Thus, on and after February 18, 2020 —just six months after Defendants launched the Digital Drops app—Plaintiff and the Class members would no longer be able to use the Digital Drops app at all, and Defendants will have eliminated all of the collectible anime content purchased by consumers.

12.    As detailed below, Plaintiff brings this action on behalf of himself and the Class members, seeking an order requiring Crunchyroll to reinstate the Digital Drops app so that consumers can once again gain access to property they purchased for valuable consideration. Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## PARTIES

### Plaintiff Brandon Letize

13.    Plaintiff Brandon Letize resides in Vallejo, California. Plaintiff has no intention of changing his residence.

### Defendants Ellation LLC and Rare Bits Inc.

14.    Defendant Ellation LLC, is a limited liability company organized under the laws of the State of Delaware that does business under the name Crunchyroll.

15.    Ellation LLC's principal executive office is located at 444 Bush Street, San Francisco, California 94108.

16.    Defendant Rare Bits, Inc. is a corporation organized under the laws of the State of Delaware.

17.    Rare Bits's principal executive office is located at 239 Duncan Street, San Francisco, California 94131.

## ALLEGATIONS COMMON TO ALL CLAIMS

18.    Digital Drops was a digital anime stickers and collectibles app available for iOS and Android devices.

19.    Through their Digital Drops app, Defendants sold digital collectibles based on anime (Japanese animated) television shows.

20.    In an announcement discussing the release of the Digital Drops app and the Products, Defendants encouraged consumers to "join the chase to collect *rare digital stickers* from your favorite anime, including Black Clover, The Time I Got Reincarnated as a Slime, Crunchyroll-Hime, Miss Kobayashi's Dragon Maid, and more."  Crunchyroll Press Release dated August 28, 2019 (available at https://www.crunchyroll.com/anime-news/2019/08/28/crunchyrolls-latest-app-crunchyroll-digital-drops-is-now-live)(emphasis added)(last visited on June 3, 2020).

21.    Defendants also stated, "From iMessage to WhatsApp to Gboard, collectibles can be used as stickers in all the most popular chat applications." *Id*.

22.    Indeed, Defendants aggressively marketed the exclusivity and rarity of the collectibles sold via the Digital Drops app and the potential growth in value of Digital Drops

collectibles over the course of time.  To that extent, Defendants noted that, "***Each collectible is individually numbered*** with a print number. Get lucky with mystery packs or trade with friends to ***lay claim to the most valuable ones***." *Id*. (emphasis added).

23.    Defendants further reinforced that theme by stating: "***Super Rare*** - Get 'Em Before They're Gone. ***Each sticker set is limited edition*** - complete your collection before it sells out."  *Id*. (emphasis added).

24.    If any single theme was repeated over and over by Defendants, it was that their digital collectibles were rare and, as such, had the potential of growing in value over the course of time. In a description of the Digital Drops app in an app store, Defendants noted:

> Crunchyroll Digital Drops is our new destination for digital stickers and ***super rare*** e-memorabilia from your favorite series and characters in the Crunchyroll universe. With new content dropping regularly, join other anime fans on a chase to find ***rare, covetable digital collectibles***. Each collectible is ***guaranteed unique***

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***and produced in limited quantities*** so get in early for a chance to ***score the most valuable ones***!

Digital Drops App Listing on Apkpure Website (available at https://apkpure.com/crunchyroll-digital-drops/io.rarebits.crunchyroll)(emphasis added)(last visited on June 3, 2020).

25.     The advertising further stated that:

Get lucky with mystery packs, ***trade with friends to complete collections, climb the leaderboard, and build out your ultimate collector's shelf.*** You can also add your anime stickers and scene cards right into your text messages using our super easy keyboard sticker integration. It turns each collectible into something to talk about!

26.     Below is an image of Defendants' advertising of their Digital Drops app.



27.     Defendant Crunchyroll, as one of the world's largest online retailers of anime products, leveraged its reputation and brand recognition to further entice consumers to purchase its purported highly collectible anime digital content, which consumers believed would be available to them forever like any other purchased product.  In connection with the above advertising, Defendants assured potential consumers of collectible e-memorabilia through the Digital Drops app that they were dealing with a legitimate company and that their purchases would, in effect, be "safe" and not subject to loss within a matter of months after purchase:

CLASS ACTION COMPLAINT

> ***Crunchyroll is the world's largest destination for anime and manga, boasting a global community of more than 40 million registered users and over 1 million subscribers.*** Fans connect through the most complete anime library including "Naruto Shippuden," "Attack on Titan," and "Dragon Ball Super," events such as Crunchyroll Expo, Anime Awards, Crunchyroll News, and can purchase related merchandise through its online store. Through its app on game consoles, set-top boxes, mobile devices and more, Crunchyroll delivers content from leading media producers directly to viewers translated professionally in multiple languages. The service is available for free or through a premium offering that allows users to watch ad-free with access to simulcasts—top series available immediately after Japanese broadcast.

> This app was developed in partnership with Rare Bits, and uses the Rare Bits engine and platform to power our robust digital collectibles experience.

*Id.* (emphasis added).

28. Defendants prominently and conspicuously represented to consumers in the marketing for the Digital Drops app and the Products that they were being purchased and, thus, would have access to the Products indefinitely.

29. Defendants had exclusive knowledge of the fact that they might shut down the Digital Drops app and that the Products would no longer be accessible to its purchasers. When Plaintiff and the Class members purchased the Products, they did not know that the Digital Drops app might shut down, and Defendants did not make that fact reasonably accessible to Plaintiff and the Class members because Defendants did not prominently and conspicuously disclose that fact.

30. Around early February 2020, the Defendants published the following FAQs on the Crunchyroll website announcing the upcoming termination of the Digital Drops app and, consequently, the permanent loss of the Products purchased from Defendants:

> Why is the app being shut down?

> The app was created in partnership between Crunchyroll and Rare Bits, a small digital goods startup. Unfortunately, this partnership has ended and therefore, the app will be shutting down.

> Why was the app around for such a short time?

The app was being piloted to support marketing promotions around Anime Expo, Crunchyroll Expo, and other anime conventions.  However, with the conclusion of the partnership, this app will no longer be supported.

When will it be turned off?

You can continue enjoying your stickers until Feb 17, 2020 at 11:59pm PST. Once the clock strikes midnight, our servers will be shut down and the app and your collection will no longer be accessible.

**What happens after it shuts down?**

***The app will no longer function, and you will no longer be able to access your stickers from messaging or keyboard apps.***

**What happens to all of my collectibles/stickers?**

***Unfortunately, your collection will no longer be accessible, and therefore neither will your stickers.***

Digital Drops FAQs (available at https://help.crunchyroll.com/hc/en-us/articles/360039213352-What-is-happening-with-Digital-Drops-)(emphasis added)(last visited on June 3, 2020).

31.    In an incredulous statement, Defendants attempt to assuage their consumers for their losses by equating the purchase of their Digital Drops "super rare" and "valuable" digital collectibles to the purchase of a movie ticket.

What about the money I spent in the app?

***Just like the money spent on a movie ticket, your purchase provided you with an entertainment experience for a certain amount of time.*** Like any other app that is removed from the app stores, the items you have purchased go dark when the app does. We appreciate the time and resources you spent in Digital Drops, and hope to entertain you again soon. If you have any questions, please feel free to write in a support ticket.

*Id.*

32.    The fundamental problem with Defendants' movie ticket analogy is that when a consumer purchases a movie ticket, they do not expect to own the movie or to be able to watch it multiple times over an indefinite period of time. Indeed, without exception, all purchasers of movie

1    tickets know that they are only purchasing the right to watch a movie once and to do so on a

2    given date and time. Thus, the experience that Defendants sold users of the Digital Drops app, and

3    purchasers of the Products, is hardly comparable to the experience movie theaters sell their patrons.

4        33.    Indeed, the audacity of the Defendants' movie ticket analogy is only surpassed by

5    Defendants' other statement in the FAQs section of the Crunchyroll website wherein they discuss

6    offering consumers the ability to purchase digital content from Crunchyroll in the future;

7    undoubtedly, at the risk of losing it just like they lost the Products they purchased from Defendants

8    via the Digital Drops app.

9        Will the app come back sometime in the future?

10       While we currently do not have plans for Digital Drops to return as an
11       app, **we are looking at different options to reintroduce collectibles in the
         future for Crunchyroll users.**

12

13   *Id*. (emphasis added)

14

15       34.    Upon information and belief, Defendants offered Product owners an opportunity to

16   download the Products from the Digital Drops app and save them onto a different server, however,

17   the process for doing so was very complicated and required a high-level of technical knowledge to

18   do so, which prevented Plaintiff and other members of the Class from being able to download and

19   save their Products elsewhere.

20       35.    Moreover, as seen in the following Reddit post by user "darkrai848," even

21   purchasers of the Products with the sophistication, knowledge and/or expertise necessary to

22   download and save the Products outside the Digital Drops app experienced problems with their

23   ability to do so.

         darkrai848

24

25       9 points·3 months ago

26       Heck they lied so bad with this thing... **they had them marked as digital
27       Collectables and said in there facts section said that it was possible to
         send them to a crypto currency wallet using the rare bits site. I signed up
28       for a rare bits account and a crypto currency wallet over a month ago to
         and fallowed the instructions in the faqs section of digital drops and hit
         a dead end in the transfer... emailed both rare bits and crunchyroll,**

*never got a response from rare bits but Crunchyroll said that the that function was still in the works (despite the apps faqs saying it was available from launch).* And now the faqs section is missing in action, so I can't call them on it...

This is so bs... *they sold the stickers as digital collectibles with the ability to store them in a crypto wallet if the app ever shut down. But now that it's shutting down they change there toon and say it was "entertainment".* Needless to say I'm mad. Not that it's shutting down, but how this was handled.

Reddit Post by darkrai848 (available at https://www.reddit.com/r/Crunchyroll/comments /ezfqqa/digital_drops_is_shutting_down_217/)(emphasis added)(last visited on June 3, 2020).

**Defendants Harmed Plaintiff in a Manner Identical to the Manner
in which Defendants Harmed the Class Members**

36.     Between August 24, 2019 and November 16, 2019, Plaintiff purchased four (4) sets of Crunchyroll Digital Drops Pack – Tier 1 digital stickers using the Digital Drops app.

37.     Consumers rely on representations and information in the marketing of apps and the digital products sold via apps in making decisions about whether to download and/or purchase apps and in making decisions about whether to buy any products sold through those apps.  To that extent, Defendants stated the following about the Digital Drops app and the Products:

Crunchyroll Digital Drops is our new destination for digital stickers and *super rare* e-memorabilia from your favorite series and characters in the Crunchyroll universe. With new content dropping regularly, join other anime fans on a chase to find *rare, covetable digital collectibles*. Each collectible is *guaranteed unique and produced in limited quantities* so get in early for a chance to *score the most valuable ones*!

Digital Drops App Listing on Apkpure Website (available at https://apkpure.com/crunchyroll-digital-drops/io.rarebits.crunchyroll (emphasis added)(last visited on June 3, 2020).

38.     In deciding to purchase Digital Drops anime stickers, Mr. Letize relied upon Defendants' representations encouraging consumers to build a collection of "***super rare e-***

*memorabilia*" that would increase in value over time, and, as such, would be available for an indefinite period of time or, at least, a reasonable length of time from the date of release.

39.     Similarly, when each Class member purchased a Product, the Class members relied upon Defendants' representations indicating that, "[w]ith new content dropping regularly, join other anime fans on a chase to find rare, covetable digital collectibles," and, accordingly, the Products would be available for an indefinite period of time or, at least, a reasonable length of time from the date of release.

40.     Moreover, when each Class member purchased a Product, the Class member relied upon Defendants' representations indicating that, "[e]ach collectible is guaranteed unique and produced in limited quantities so get in early for a chance to score the most valuable ones!" and, accordingly, the Products would be available for an indefinite period of time or, at least, a reasonable length of time from the date of release.

41.     At the time Plaintiff purchased the Products, Plaintiff reasonably expected that Defendants would not subsequently eliminate his ability to access the Products purchased by him.

42.     Similarly, at the time each Class member purchased the Products, the Class member reasonably expected that Defendants would not subsequently eliminate their ability to access the Products purchased by them.

43.     At the time Plaintiff purchased the Products, Defendants had exclusive knowledge that they might subsequently shut down the Digital Drops app and, consequently, Plaintiff would lose all access to the Products purchased by him. However, Defendants failed to disclose, or failed to disclose prominently and conspicuously, that Defendants would subsequently shut down the Digital Drops app.

44.     Similarly, at the time each Class member purchased a Product, Defendants had exclusive knowledge that they might subsequently shut down the Digital Drops app and, consequently, each Class member would lose all access to the Products purchased by him/her. However, Defendants failed to disclose, or failed to disclose prominently and conspicuously, that Defendants would subsequently shut down the Digital Drops app.

45.   Had Plaintiff known at the time he purchased the Products that Defendants would, only several months later, shut down the Digital Drop servers that enabled him to access the Products he purchased, he would not have purchased the Product or paid the price he paid for the Product.

46.   Similarly, had each Class member known at the time they purchased a Product that Defendants would, only several months later, shut down the Digital Drop app servers that enabled consumers to access the Products purchased by them, each Class member would not have purchased the Product or paid the price he/she paid for the Product.

47.   Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions, which indicated that the Products would be usable in their entirety for an indefinite period of time or, at least, a reasonable length of time from the date of release.

48.   Defendants' misleading affirmative statements about the Digital Drops app and the Products sold on the app obscured the material facts that Defendants failed to disclose, or failed to disclose prominently and conspicuously, namely, that Defendants would, only several months after their release, shut down the Digital Drops app servers that made the Digital Drops app and the Products accessible to their owners.

49.   As an immediate, direct, and proximate result of Defendants' deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

    a.    paid a sum of money for Products that were not what Defendants represented;

    b.    paid a premium price for Products that were not what Defendants represented;

    c.    were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

    d.    did not receive Products that measured up to their expectations, which Defendants created; and

    e.    were denied the benefit of the continuous and ongoing online access to the Products that Defendants promised.

50.   Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

51.   Plaintiff and the Class members paid for Products that would be available to its owners for an indefinite period of time or, at least, for a reasonable length of time from the date of release. However, Plaintiff and the Class members purchased Products that became unavailable after February 17, 2020 at 11:59 p.m. PST. For these reasons, the Products Plaintiff and the Class members received were worth less than the Products for which they paid.

52.   Based on Defendants' misleading and deceptive representations, it was able to, and did, charge a premium price for the Products.

53.   Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions. Plaintiff and the Class members purchased the Products when they would not have done so had they know the truth about them, or, alternatively Plaintiff and the Class members paid more for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered injury in fact and lost money or property as a result of Defendants' wrongful conduct.

**Defendants Will Benefit Greatly from Shutting Down Digital Drops**

54.   Even though Defendants knew they might not allocate resources to the Digital Drops app indefinitely, Defendants engaged in a widespread marketing and advertising campaign to portray the Digital Drops app and the Products sold through the app would be available indefinitely or, at least, for a reasonable length of time from the date of release. Additionally and/or alternatively, Defendants' marketing campaign failed to disclose prominently and conspicuously that the Products would not be available indefinitely or, at least, for a reasonable length of time from the date of release.

55.   Defendants engaged in this deceptive campaign to sell and/or charge a premium price for the Products.

56.   Defendants had a strong motive to shut down Digital Drops app. Defendants will gain substantial financial benefits from having shut down the Digital Drops app service because it will no longer have to incur any expenses to provide and maintain the Digital Drops app and the Products, including the cost of maintaining the Digital Drops app servers 24 hours a day for seven days a week.

57.   Because consumers who purchased the Products will no longer be able to access the Products they purchased, the injury is substantial.

## CLASS ACTION ALLEGATIONS

58.   Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a proposed nationwide class defined as follows:

**The Injunctive Relief Class.** All individual consumers who purchased the Products in the United States during the period from the release of the Digital Drops app to February 17, 2020. Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class. The Injunctive Relief Class does not seek any form of monetary relief.

59.   Excluded from the Class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

60.   Plaintiff reserves the right to alter the Class definition as he deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of California, and applicable precedent allow.

61.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

62.   <u>Numerosity; Rule 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Due to the nature of Defendants' business, Plaintiff believes there are at

least thousands, if not tens or hundreds of thousands, of Class members geographically dispersed throughout the United States.

63.     <u>Commonality; Rule 23(a)(2)</u>: There are questions of law and fact common to the Class.

64.     All Class members are subject to the same actions by Defendants that are at the core of this case. All Class members were exposed to Defendants' deceptive advertising and marketing representations indicating that the Products they sold via the Digital Drops app would be available to its owners for an indefinite period of time or, at least, for a reasonable length of time from the date of their release. At the time all Class members purchased the Products, Defendants had exclusive knowledge of the material fact that it might shut down the Digital Drops app and, with that, the Class members would lose access to the app and the Products purchased by them from Defendants, and Defendants failed to disclose prominently and conspicuously that fact to each Class member. On February 17, 2020, when Defendants shut down the servers that made the Digital Drops app available, all Class members suffered the same substantial injury.

65.     Additional common legal and factual questions include but are not limited to:

     a.     whether Defendants engaged in the course of conduct alleged herein;

     b.     whether Defendants' conduct at issue is likely to deceive a reasonable consumer;

     c.     whether Defendants' conduct at issue constitutes an unfair or deceptive act or practice;

     d.     whether Defendants represented to Plaintiff and the Class members that the Products would remain available to its owners, indefinitely or, at least, for a reasonable length of time from the date of the Products' release;

     e.     whether Defendants had a duty to Plaintiff and the Class members to disclose prominently and conspicuously at the point of purchase that it might subsequently shut down the Digital Drops app;

     f.     whether the fact that Defendants might shut down Digital Drops app after its launch was material to a reasonable consumer;

      g.     whether Defendants' conduct violates the California consumer protection statutes set forth below; and

      h.     whether Plaintiff and the Class members are entitled to injunctive relief.

66.    Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Moreover, the common questions will yield common answers.

67.    <u>Typicality; Rule 23(a)(3)</u>: Plaintiff's claims are typical of the claims of the Class members because all Class members were subject to Defendants' misleading and unfair advertising and marketing practices, representations, and omissions; and Plaintiff seeks the same relief as the Class members.

68.    Furthermore, there are no defenses available to Defendants that are unique to Plaintiff.

69.    <u>Adequacy of Representation; Rule 23(a)(4)</u>: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendants. Furthermore, Plaintiff has selected competent counsel that are experienced in class action and other complex litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

70.    <u>Injunctive or Declaratory Relief; Rule 23(b)(2)</u>: The requirements for maintaining a class action pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

71.    <u>Notice</u>: Plaintiff and his counsel anticipate that, to the extent notice is necessary in connection with the Rule 23(b)(2) Class that Plaintiff proposes herein, notice to the Class members will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

**CLAIMS**

**FIRST CLAIM**

**Violation of California's Consumers Legal Remedies Act,**

**C‍AL. C‍IV. C‍ODE § 1750 *et seq.***

**On Behalf of the Class**

**Seeking Injunctive Relief Only**

72.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

73.     Plaintiff brings this claim on behalf of the Class for violation of California's Consumers Legal Remedies Act, C‍AL. C‍IV. C‍ODE § 1750 *et seq.* (the "CLRA").

74.     This claim is for injunctive relief only, pursuant to California Civil Code section 1782(d).

75.     Under the CLRA, "services" means "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." C‍AL. C‍IV. C‍ODE § 1761(b).

76.     The Digital Drops app that sold and stored the Products is a "service" under the CLRA.

77.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

78.     Plaintiff and the Class members are "consumers" under the CLRA.

79.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

80.     Each Defendant is a "person" under the CLRA.

81.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

82.   Defendants, on the one hand, and Plaintiff and the Class members, on the other hand, engaged in "transactions" under the CLRA because, among other reasons, Defendants agreed to sell, and pursuant to that agreement sold, the Products to Plaintiff and the Class members.

83.   Defendants' actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

84.   Under California Civil Code section 1770(a):

(a) The following unfair methods of competition and unfair or

deceptive acts or practices undertaken by any person in a transaction

intended to result or which results in the sale or lease of goods or

services to any consumer are unlawful:

*   *   *   *   *

(5) Representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities which they do

not have . . . .

*Id.* § 1770(a).

85.   As detailed above, Defendants have violated California Civil Code section 1770(a)(5) by representing that the Products have characteristics and benefits that they did not have, i.e., Defendants made representations to Plaintiff and the Class members indicating that the Products purchased by them would be available online, indefinitely or, at least, for a reasonable length of time from the date of release, when in fact Defendants shut down the Digital Drops app, and access to the Products, on February 17, 2020 at 11:59 p.m. PST, only six months  after they launched the Digital Drops app.

86.   Additionally, or alternatively, Defendants have violated the CLRA by making material omissions. At the time Plaintiff and the Class members purchased the Products, Defendants had a duty to disclose to Plaintiff and the Class members the material fact that Defendants might shut down the Digital Drops app and, consequently, the Class members' access to the Products would be terminated. Defendants had exclusive knowledge of the fact that it might shut down the

1   Digital Drops app. When Plaintiff and the Class members purchased the Products, they did not

2   know that Defendants might shut down the Digital Drops app, and Defendants did not make that

3   fact reasonably accessible to Plaintiff and the Class members because Defendants did not

4   prominently and conspicuously disclose that fact.

5       87.   Defendants stated in early February 2020 that it would permanently shut down the

6   Digital Drops app that housed the Products on February 17, 2020 at 11:59 p.m. PST. Defendants'

7   advertising and marketing representations and omissions are, consequently, misleading, untrue, and

8   likely to deceive reasonable consumers.

9       88.   Defendants violated the CLRA by making the representations and omissions in the

10  Product marketing that are detailed above when it knew, or should have known, that their

11  representations and omissions were false and misleading.

12      89.   Plaintiff and the Class members believed Defendants' representations that the

13  Products purchased via the Digital Drops app would be available to its owners indefinitely or, at

14  least, for a reasonable length of time from the date of release.

15      90.   Plaintiff and the Class members would not have purchased the Products, but for the

16  misleading representations and/or omissions by Defendants detailed above.

17      91.   The Products Plaintiff and the Class members received were worth less than the

18  Products for which they paid. Plaintiff and the Class members paid a premium price on account of

19  Defendants' misrepresentations and/or omissions detailed herein.

20      92.   Plaintiff and the Class members were injured in fact and lost money as a result of

21  Defendants' representations and/or omissions about the Products detailed above. Plaintiff and the

22  Class members paid for Products that they believed would be available to them indefinitely or, at

23  least, for a reasonable length of time from the date of release, but did not receive such Products, as

24  Defendants shut down, only six months after its release, the Digital Drops app that consumers

25  needed to use to access the Products.

26      93.   Plaintiff, on behalf of the Class members, requests that the Court require Defendants

27  to turn on the servers that hosted the Digital Drops app and the Class's Products. If the Court does

28  not require Defendants to reinstate the Digital Drops app and return to the Class the Products

purchased by them from Defendants, Plaintiff and the Class members will be harmed in that they will no longer be able to access the Products they purchased for valuable consideration.

94.     Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## SECOND CLAIM

### Violation of California's False Advertising Law,

### CAL. BUS. & PROF. CODE § 17500 *et seq.*

### On Behalf of the Class

95.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

96.     Plaintiff brings this claim on behalf of the Class for violation of California's False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq.* (the "FAL").

97.     At all relevant times, Defendants engaged in a public advertising and marketing campaign representing that the Products sold by them via the Digital Drops app would be available to its owners indefinitely or, at least, for a reasonable length of time from the date of the Product's release.

98.     Additionally and/or alternatively, Defendants have violated, and continues to violate, the FAL by making material omissions. At the time Plaintiff and the Class members purchased the Products, Defendants had a duty to disclose to Plaintiff and the Class members the material fact that Defendants might shut down the Digital Drops app and, consequently, the Class would lose the Products purchased by them. Defendants had exclusive knowledge of the fact that it might shut down the Digital Drops app. When Plaintiff and the Class members purchased the Products, they did not know that Defendants might shut down the Digital Drops app, and Defendants did not make that fact reasonably accessible to Plaintiff and the Class members because Defendants did not prominently and conspicuously disclose that fact.

99.     Defendants stated in early February 2020, that they would permanently shut down the servers supporting the Digital Drops app, and all of the Products purchased by the Class would

no longer be available for access after February 17, 2020 at 11:59 p.m. PST. Defendants' advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

100.    Defendants engaged in their advertising and marketing campaign with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Products based on Defendants' false and misleading representations and omissions.

101.    In making and disseminating the representations and omissions detailed herein, Defendants knew or should have known that the representations and omissions were untrue or misleading.

102.    Plaintiff and the Class members believed Defendants' representations that the Products purchased on the Digital Drops app would be available to its owners indefinitely or, at least, for a reasonable length of time from the date of release.

103.    Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendants detailed above.

104.    The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a premium price on account of Defendants' misrepresentations and/or omissions detailed herein.

105.    Plaintiff and the Class members were injured in fact and lost money as a result of Defendants' representations and/or omissions about the Products detailed above. Plaintiff and the Class members paid for Products that they believed would be available to them indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendants shut down, only six months after its release, the Digital Drops app that housed the Products and, consequently, the Class members lost all access to the Products.

106.    Plaintiff, on behalf of the Class members, requests that the Court require Defendants to turn on the servers that hosted the Digital Drops app and the Class's Products. If the Court does not require Defendants to reinstate the Digital Drops app and return to the Class the Products purchased by them, Plaintiff and the Class members will be harmed in that they will no longer be able to access the Products they purchased for valuable consideration.

107. Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

## THIRD CLAIM

### Violation of California's Unfair Competition Law,

### CAL. BUS. & PROF. CODE § 17200 *et seq.*

### Unlawful, Unfair, and Fraudulent Prongs

### On Behalf of the Class

108.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

109.     Plaintiff brings this claim on behalf of the Class for violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").

110.     The circumstances giving rise to Plaintiff's and the Class members' allegations include Defendants' corporate policies regarding the sale and marketing of the Products and regarding Defendants' provision of the Digital Drops app and their sale of the Products to the Class members.

111.     Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. CAL. BUS. & PROF. CODE § 17200.

112.     By engaging in the acts and practices described herein, Defendants have committed one or more acts of "unfair competition" as the UCL defines the term.

113.     Defendants have committed "unlawful" business acts or practices by violating the CLRA and the FAL, as detailed above.

114.     Defendants have committed "unfair" business acts or practices by, among other things:

    a.     engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the Class;

b.      engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and

c.      engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

115.    Defendants have committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendants knew or should have known was likely to and did deceive reasonable consumers, including Plaintiff and the Class members.

116.    As detailed above, Defendants' unlawful, unfair, and/or fraudulent practices include making false and misleading representations and/or omissions.

117.    As detailed above, Defendants have made material representations that the Products purchased by the Class on the Digital Drops app would be available indefinitely or, at least, for a reasonable length of time from the date of release.

118.    Additionally and/or alternatively, Defendants have made material omissions. At the time Plaintiff and the Class members purchased the Products, Defendants had a duty to disclose to Plaintiff and the Class members the material fact that Defendants might shut down the Digital Drops app and, consequently, the Class would no longer have access to the Products. Defendants had exclusive knowledge of the fact that they might shut down the Digital Drops app. When Plaintiff and the Class members purchased the Products, they did not know that Defendants might shut down the Digital Drops app and, consequently, the Class would lose access to the Products purchased by them, and Defendants did not make that fact reasonably accessible to Plaintiff and the Class members because Defendants did not prominently and conspicuously disclose that fact.

119.    Defendants stated on in early February 2020, that they would permanently shut down the Digital Drops app on February 17, 2020 at 11:59 p.m. PST. Defendants' advertising and marketing representations and omissions are, consequently, misleading, untrue, and likely to deceive reasonable consumers.

120.    Defendants made the representations and omissions with intent to directly induce consumers, including Plaintiff and the Class members, to purchase the Products based on the false and misleading representations and omissions.

121. Plaintiff and the Class members believed Defendants' representations that the Products purchased via the Digital Drops app would be accessible to their owners indefinitely or, at least, for a reasonable length of time from the date of release.

122. Plaintiff and the Class members would not have purchased the Products, but for the misleading representations and/or omissions by Defendants detailed above.

123. The Products Plaintiff and the Class members received were worth less than the Products for which they paid. Plaintiff and the Class members paid a premium price on account of Defendants' misrepresentations and/or omissions detailed herein.

124. Plaintiff and the Class members were injured in fact and lost money as a result of Defendants' violations of the unlawful, unfair, and/or fraudulent prongs of the UCL that are set out above. Plaintiff and the Class members paid for Products that they believed would be accessible to them indefinitely or, at least, for a reasonable length of time from the date of release, but did not receive such Products, as Defendants, only six months after its release, shut down the Digital Drops app required to access the Products as of February 17, 2020 at 11:59 p.m. PST.

125. Plaintiff, on behalf of the Class members, requests that the Court require Defendants to turn on the servers that hosted the Digital Drops app and the Class's Products. If the Court does not require Defendants to reinstate the Digital Drops app and return to the Class the Products purchased by them from Defendants, Plaintiff and the Class members will be harmed in that they will no longer be able to access the Products they purchased for valuable consideration.

126. Therefore, Plaintiff prays only for injunctive relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

1

## **PRAYER FOR RELIEF**

2      WHEREFORE, Plaintiff, on behalf of himself and the Class members, respectfully requests

3   that the Court enter an Order:

4      A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a) and (b)(2),

5   as set forth above;

6      B.      declaring that Defendants are financially responsible for notifying the Class members

7   of the pendency of this suit;

8      C.      declaring that Defendants have committed the violations of law alleged herein;

9      D.      providing for any and all injunctive relief the Court deems appropriate;

10     E.      awarding Plaintiff his reasonable costs and expenses of suit, including attorneys'

11   fees, pursuant to CLRA 1780(e);

12     F.      awarding pre- and post-judgment interest to the extent the law allows; and

13     G.      providing such further relief as this Court may deem just and proper.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: June 5, 2020                          Respectfully submitted,

                                            **REESE LLP**

                                    By:  _/s/ Michael R. Reese_____
                                        Michael R. Reese (Cal. State Bar No. 206773)
                                        *mreese@reesellp.com*
                                        Carlos F. Ramirez (*Pro hac vice* to be submitted)
                                        cramirez@reesellp.com
                                        100 West 93rd Street, 16th Floor
                                        New York, New York  10025
                                        Telephone: (212) 643-0500
                                        Facsimile: (212) 253-4272

                                        **REESE LLP**
                                        George V. Granade (SBN 316050)
                                        *ggranade@reesellp.com*
                                        8484 Wilshire Boulevard, Suite 515
                                        Los Angeles, California 90211
                                        Telephone: (212) 643-0500
                                        Facsimile: (212) 253-4272

                                        *Counsel for Plaintiff Brandon Letize*
                                        *and the Proposed Class*

CLASS ACTION COMPLAINT